**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**STEPHANIE MAUREEN MCKENZIE,**

    Plaintiff,

**v.**                                                                                             **Civil Action No. 2:14-CV-52
(BAILEY)**

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security**,**

    Defendant.

**ORDER ADOPTING REPORT AND RECOMMENDATION**

I.    Introduction

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation ("R&R") of United States Magistrate Judge Robert W. Trumble [Doc. 19], the plaintiff's Objections thereto [Doc. 20], and the Commissioner's Response to Plaintiff's Objections [Doc. 21]. Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, failure to file objections permits the district court to review the R&R under the standards that the district court believes are appropriate, and under these circumstances, the parties' right to *de novo* review is waived. *See* **Webb v. Califano**, 468 F.Supp. 825 (E.D. Cal. 1979). Accordingly, this Court will conduct a *de novo* review only as to those portions of the R&R to which the plaintiff objected. The remaining portions of the R&R will be reviewed for clear error. As a result, it is the opinion of this Court that the R&R should be **ORDERED ADOPTED**.

1

II.  Background

On July 2, 2014, the plaintiff filed her Complaint [Doc. 1] seeking judicial review of an adverse decision by the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g).  Pursuant to the Local Rules, this case was referred to United States Magistrate Judge Trumble for proposed findings of fact and a recommended disposition.  On September 25, 2014, and October 23, 2014, the plaintiff and the defendant filed their respective motions for summary judgment [Docs. 10 & 12].  In support of her motion, the plaintiff asserts three claims of error on the part of the Administrative Law Judge ("ALJ").  In the defendant's motion, she responds to each of these claims and argues that the ALJ's decision is supported by substantial evidence.

First, the plaintiff asserts the ALJ failed to account for plaintiff McKenzie's mitral valve prolapse impairment at Step 2 of the Sequential Evaluation.  The defendant responds that the severity of the mitral valve prolapse is not legally relevant because the ALJ found at least one impairment severe, proceeded beyond step two, and assessed the plaintiff's RFC wherein all impairments were taken into account.

Second, the plaintiff alleges the ALJ erred by failing to cease the Sequential Evaluation at Step 3 despite the medical factors indicating a Listing level schizophrenic condition.  The defendant responds that the ALJ assessed the plaintiff's problems and the substantial evidence supports the ALJ's finding that the plaintiff did not meet or equal Listing 12.03.

Third, the plaintiff claims the ALJ performed a Step 4 credibility analysis and RFC evaluation that was unnecessary and, ultimately, faulty as the ALJ did not provide substantial evidence to support his position that Ms. McKenzie did not suffer from a Listing

level schizophrenic disorder or that Dr. Goudy's opinion deserved less than significant weight. In response, the defendant argues that the ALJ properly found that Dr. Goudy's opinion that the plaintiff met Listing 12.03 was not entitled to controlling weight and that the ALJ properly assessed the plaintiff's credibility.

On January 22, 2015, Magistrate Judge Trumble rejected all three of the plaintiff's claims of error and recommended that the plaintiff's motion be denied and the defendant's motion be granted. ([Doc. 19] at 33). First, the magistrate judge concluded that the ALJ's failure to mention the plaintiff's mitral valve prolapse during step two of the sequential evaluation was harmless error. (Id. at 19). In so concluding, the magistrate judge emphasized that the record shows that the plaintiff "provided no medical evidence that this condition caused a related functional loss." (Id. at 21). Second, the magistrate judge concluded that "substantial evidence supported the ALJ's conclusion that the plaintiff did not meet Listing 12.03; therefore it was proper for the ALJ to proceed on to step four of the sequential analysis." (Id. at 23). Third, the magistrate judge also concluded that "substantial evidence supported the weight that the ALJ gave Dr. Goudy's opinion and there was no error of law." (Id. at 27). Specifically, the magistrate judge emphasized that "the ALJ does not need to specifically list and address each factor in his decision, so long as sufficient reasons are given for the weight assigned to the treating source opinion." (Id. at 28). Finally, the magistrate judge concluded that "the ALJ correctly performed a credibility analysis and residual functional capacity at step four since plaintiff did not meet a listing." (Id. at 29). Specifically, the magistrate judge emphasized that the ALJ's recitation of "the plaintiff's daily activities and that plaintiff has reported stabilization in her condition" demonstrate that the substantial evidence supports the ALJ's credibility

determination; accordingly, there was no error of law.  (Id. at 33).

III.    Applicable Standards

   A.    Judicial Review of an ALJ Decision

"Judicial review of a final decision regarding disability benefits is limited to determining whether the findings . . . are supported by substantial evidence and whether the correct law was applied.  See 42 U.S.C. § 405(g).  'The findings . . . as to any fact, if supported by substantial evidence, shall be conclusive.'  **Richard v. Perales**, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); **Coffman v. Bowen**, 829 F.2d 514, 517 (4th Cir. 1987).  The phrase 'supported by substantial evidence' means 'such relevant evidence as a reasonable person might accept as adequate to support a conclusion.'  See **Perales**, 402 U.S. at 401, 91 S. Ct. at 1427 (citing **Consolidated Edison Co. v. NLRB**, 305 U.S. 197, 229, 59 S. Ct. 206, 216 (1938)).  Substantial evidence . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance . . ..  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment . . . if the decision is supported by substantial evidence.  See **Laws v. Celebrezze**, 368 F.2d 640, 642 (4th Cir. 1966); **Snyder v. Ribicoff**, 307 F.2d 518, 529 (4th Cir. 1962).  Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.  **King v. Califano**, 599 F.2d 597, 599 (4th Cir. 1979).  'This Court does not find facts or try the case *de novo* when reviewing disability determinations.'  **Seacrist v. Weinberger**, 538 F.2d 1054, 1056-57 (4th Cir. 1976)."  **Hays v. Sullivan**, 907 F.2d 1453, 1456 (4th Cir. 1990).

B. Five-Step Evaluation Process

To determine whether a claimant is disabled, the ALJ considers the following five-step evaluation process:

Step One: Determine whether the claimant is engaging in substantial gainful activity;

Step Two: Determine whether the claimant has a severe impairment;

Step Three: Determine whether the claimant has a listed impairment (20 C.F.R. Part 404, Subpart P, Appendix 1) and conduct a Residual Functional Capacity ("RFC") assessment;

Step Four: Consider the RFC assessment to determine whether the claimant can perform past relevant work; and

Step Five: Consider the RFC assessment, age, education, and work experience to determine whether the claimant can perform any other work.

See 20 C.F.R. § 404.1520.

IV. Discussion

In her Objections [Doc. 20], timely filed on January 29, 2015, the plaintiff takes issue with the analysis of the magistrate judge. The Court will address these objections as they relate to each of the plaintiff's claims of error discussed above. In so doing, the Court will determine, *de novo*, whether any claim of error necessitates a finding that one of the ALJ's step-conclusions is not supported by substantial evidence. Ms. McKenzie voices four specific objections to the magistrate judge's findings. This Court will address each objection in turn.

In her first Objection, the plaintiff asserts the magistrate judge engaged in improper post-*hoc* rationalization by referring to Dr. Bartee's assessment. In citing **S.E.C. v. Chenry Corp.**, 332 U.S. 194, 196-97 (1947), the plaintiff correctly notes that the Court must

5

ascertain whether the substantial evidence supports the ALJ's decision as written by the ALJ and not confirm the ALJ's position based on some reasoning found by the Court, but not used by the ALJ.

The plaintiff asserts that the ALJ neither relied on the findings of Dr. Bartee, nor did he assign any particular weight to his opinion. In support, the plaintiff points out that while Dr. Bartee indicated plaintiff's schizophrenia was not severe, the ALJ did find her condition to be a severe impairment. Accordingly, the plaintiff asserts Dr. Bartee's opinion carried no weight with the ALJ. This may actually help explain why Dr. Bartee's name is never even mentioned in the ALJ's decision. This Court will therefore review the ALJ's decision without reference to Dr. Bartee. As more fully discussed herein, after fully disregarding Dr. Bartee's opinion, this Court nevertheless finds the ALJ's decision is supported by substantial evidence.

The plaintiff argues that the magistrate judge engaged in a post-*hoc* rationalization by noting Dr. Bartee's opinion above. Plaintiff's argument, however, ignores the rest of the magistrate judge's analysis. First, the magistrate judge states that "[o]ther than Dr. Goudy's opinion, there is nothing in the medical record indicating that plaintiff has 'marked' difficulties in social functioning, concentration, persistence and pace." ([Doc. 19] at 25). The magistrate judge correctly goes on to discuss the totality of the evidence and found inconsistencies in the record which weighed against Dr. Goudy's assessment of the Paragraph B criteria. The magistrate judge notes, "on June 24, 2011, Junemarie Wiliams, F.N.P. of United Summit Center provided a psychiatric intake evaluation noting plaintiff: . . . could perform mental arithmetic without any problems. She could remember apple-table-grass at one, three and five minutes. She knew who Christopher Columbus, William

Shakespeare, and Abraham Lincoln were. She could spell 'world' backwards and forward, and could tell similarities and differences between words." The magistrate judge noted other inconsistencies in Dr. Goudy's opinion and the record such as denying hurting herself, having suicidal or homicidal thoughts, she was sleeping better, feeling "much better", even "happy", and she was not having any hallucinations. While the magistrate judge may have improperly used post-*hoc* rationalization in his analysis, the ALJ's opinion is nevertheless supported by substantial evidence. This Objection is **OVERRULED** insofar as the magistrate judge's use of Dr. Bartee's opinion was harmless error.

In the plaintiff's second objection, she argues that the ALJ erred in finding plaintiff's schizophrenia did not meet the durational requirement. Again, the plaintiff attacks the R&R's use of Dr. Bartee's opinion. The evidence as a whole, however, supports the ALJ's finding. Specifically, the ALJ chronicles the plaintiff's treatment at USC in great detail. Throughout that period, plaintiff was evaluated at least seven times over the course of a year and a half. During that time, plaintiff denied any suicidal or homicidal ideation, reported that she was "doing well," feeling "much better," denied self injury, etc. In fact, the claimant added, "I actually feel happy." Most importantly, she reported that her symptoms had stabilized with the use of medication.

The claimant was originally admitted and treated for psychosis when she began having auditory and visual hallucinations in May of 2011. By September of 2011, she reported that she was no longer experiencing these problems. In January 2012, she reported that although her symptoms had stabilized with the use of medication, she did hear voices occasionally, but explained that these were "good" voices. In August 2012, claimant denied hearing any bad voices. In December 2012, she stated that she had not

heard either "good or bad" voices for approximately two months. She reported that she was happier and believed her happiness had rid her of the voices altogether.

Having reviewed the above, it is clear that the ALJ considered all the evidence in his Paragraph B analysis. This Objection is **OVERRULED**.

In her third objection, the plaintiff argues the R&R again engages in post-*hoc* rationalization regarding the Paragraph C criteria.

Paragraph C requires the following:

Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of a least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.03.

In addressing this criteria, the ALJ noted plaintiff's daily life activities which would

simply contradict a favorable Paragraph C determination. In addition to the many other activities listed in his opinion, the ALJ highlights that:

> [Claimant] is able to perform a number of activities, such as reading, writing, operating a computer, purchasing items on online auctions, preparing simple meals, watching some television, caring for her cat, shopping for groceries, collecting toys and performing acts of personal care.
>
> [Doc. 7-2].

Further, the ALJ noted plaintiff's compliance with her medication, that she has not had psychotic episodes since her initial inpatient admission in May 2011, her condition has stabilized, she reported "feeling great" and being happy, and, importantly, has denied hearing voices since "January 2012 or April 2012 at most." [Doc. 7-2]. Thus, the ALJ concluded that, "[s]urely if the claimant is able to perform all of these activities, particularly going shopping at Wal-Mart on Black Friday without feeling anxious, she is capable of doing some work-related activities on a regular and continuing basis." Id.

Despite the above, in the plaintiff's objections, she again faults the magistrate judge's analysis, while ignoring that the ALJ's opinion itself is clearly supported by substantial evidence. In addition to the above, the ALJ explained in detail his reasons for making his determination. In so doing, he stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . ..

9

Id.

Further, the ALJ sufficiently explained the reasons for the lesser weight he gave Dr. Goudy's opinions:

> [I have] considered the opinion of Dr. Goudy that the claimant meets the listing for schizophrenia and has been disabled since 2010, but [am] unable to give it significant weight in this decision. Dr. Goudy's review of the medical evidence of record was selective. He noted that USC records showed a consistent Global Assessment of Functioning of 45, while not noticing an extreme difference in the reports of her examiners at USC. Further, Dr. Goudy left unexplained the claimant's numerous contradictory statements she made to him, compared to her prior reports, as well as the objective medical evidence.

Id.

As the ALJ expressly stated in his opinion, the residual functional capacity assessment is supported by the medical evidence of record, the reports of the claimant's examining physicians, and the record in its entirety. The plaintiff's objection is **OVERRULED**.

Finally, the plaintiff objects that the ALJ and the R&R's analyses do not properly take into consideration that the claimant's inconsistent statements are the type of manifestations that come from a schizophrenic disorder. As schizophrenia is a mental disease that affects a person's ability to perceive reality, plaintiff argues, inconsistent statements showing how a person is "feeling" must be viewed with caution.

An ALJ's credibility analysis is a two-step process:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms . . . .
>
> Second, . . . the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's ability to do basic work activities.

SSR 96-7p; 1996 WL 374186, *2.

In addressing step two, an ALJ should consider the following seven factors:

> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 or 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p; 1996 WL 374186, *3.

At step one of the credibility analysis, the ALJ found that the plaintiff has two severe impairments, including osteoarthritis and schizophrenia. At step two, however, the ALJ questioned the plaintiff's subjective complaints to Dr. Goudy regarding the intensity, persistence, and limiting effects on her ability to do basic work activities. In so doing, the ALJ considered the plaintiff's daily activities. Second, this Court finds substantial evidence in the ALJ's consideration of several other appropriate factors. For example, the ALJ

11

considered the location, duration, frequency, and intensity of the plaintiff's symptoms as more fully outlined above.

For these reasons, this Court finds that substantial evidence supports the ALJ's credibility determination. Accordingly, in formulating the plaintiff's RFC, the ALJ appropriately considered her lack of credibility concerning the intensity, persistence, and limiting effects of her ability to do basic work activities as reported to Dr. Goudy.

According to the SSA, treating source opinions are entitled to special significance and, sometimes, controlling weight. SSR 96-5p; 1996 WL 374183, *2. However, treating source opinions on issues reserved to the Commissioner, such as the RFC assessment, "are never entitled to controlling weight or special significance." Id. Nevertheless, opinions from any medical source on issues reserved to the Commissioner "must never be ignored." In fact, "[i]f the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." SSR 96-5p; 1996 WL 374183, *3.

Here, the ALJ appropriately followed these parameters, deciding to attribute little weight to Dr. Goudy's opinions because they are based in large part on the claimant's subjective complaints, are inconsistent with the record as a whole and are inconsistent with the claimant's activities. Therefore, the ALJ provided reasons for the weight he attributed to Dr. Goudy's opinions.

Remaining consistent with his earlier credibility determination, the ALJ found that to the extent Dr. Goudy relied upon the plaintiff's subjective complaints, his opinions should be attributed little weight. The ALJ appropriately noted that Dr. Goudy's assessment was

inconsistent with the plaintiff's own testimony regarding her daily activities. It appears to this Court as well as the findings of the ALJ that the only inconsistencies were those reported to Dr. Goudy. All the other evidence of record tends to support the ALJ's findings. Thus, any argument that the portrayal of the claimant's limitations were skewed by her very mental illness are simply belied by the overwhelming evidence of record. This Objection is **OVERRULED**.

V.  Conclusion

Upon careful review of the R&R, it is the opinion of this Court that the Magistrate Judge's Report and Recommendation **[Doc. 19]** should be, and hereby is, **ORDERED ADOPTED**. Further, the plaintiff's Objections **[Doc. 20]** are **OVERRULED**. Therefore, this Court **ORDERS** that the plaintiff's Motion for Summary Judgment **[Doc. 10]** is hereby **DENIED** and the defendant's Motion for Summary Judgment **[Doc. 12]** is hereby **GRANTED**. Accordingly, the Court hereby **DISMISSES WITH PREJUDICE** the plaintiff's Complaint **[Doc. 1]** and **ORDERS** it **STRICKEN** from the active docket of this Court. The Clerk shall enter separate judgment in favor of the defendant.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record.

**DATED**: May 28, 2015.

_____
JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE